IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| James G. Blakely, | ) |
| Plaintiff, | ) Case No. 4:10-cv-00718-RMG-TER |
| v. | ) ORDER |
| Jon Ozmint, Director, et al., | ) |
| Defendants. | ) |

### I.   Background

This matter is before the Court upon Plaintiff James G. Blakely's ("Plaintiff" or "Blakely") Motion for Medical Treatment (Dkt. No. 25) and Plaintiff's Motion to Transfer (Dkt. No. 76). The current motions before the Court, pursuant to the provisions of Title 28, United States Code, Section 636(b)(1), and Local Rule 73.02(B)(2)(d), D.S.C., were referred to the Magistrate Judge for his Report and Recommendation. Upon his review, the Magistrate recommended denying the Plaintiff's Motion for Medical Treatment (construed as a Motion for Preliminary Injunction) and denying Plaintiff's Motion to Transfer. (See Report & Recommendation at Dkt. No. 83.) The Magistrate Judge advised Plaintiff of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if he failed to do so. Plaintiff filed Objections to the Report on or about February 6, 2011. (Dkt. No. 96.) In his Objections, however, Plaintiff states that he "will argue[] that the Report and Recommendation is mooted," given that "Plaintiff has been transferred after notifying medical and classification in Columbia, S.C. at headquarter[s]." (Objections at 1.) Plaintiff states,

"It appears that headquarter[s] does not agree with the Court finding and have transferred Plaintiff. Therefore, the issues in the Report and Recommendation are mooted." (Id. at 1-2.) As noted herein, this Court agrees with the Magistrate Judge. Plaintiff's Motion for Medical Treatment (Dkt. No. 25) is denied, and Plaintiff's Motion to Transfer (Dkt. No. 76) is denied as moot.

## II.   Discussion

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. See Mathews v. Weber, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. See 28 U.S.C. § 636(b).

After reviewing the record of this matter *de novo*, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiffs' Objections, the court agrees with the conclusions of the Magistrate Judge. With respect to the Motion for Medical Treatment (Dkt. No. 25), the Court concludes the Magistrate Judge properly construed the motion as a Motion for a Preliminary Injunction. As Magistrate Judge Rogers noted, Plaintiff asserts that he is "in imminent danger of serious physical injury." (Dkt. No. 25.) Plaintiff asserts that he "has been denied all his medication" and that he "is experiencing head, eyes and chest pains." (Id.) Plaintiff also asserts that he "is being denied the right to a podiatrist, the right to an optometrist, and the right to a neurologist." (Id.) Plaintiff requests that, "under the circumstances and considering the

number of defendants here at this institution," that this Court order he be transferred to a "safer environment from defendants in this case." (Id.)

As Magistrate Judge Rogers noted and throughly explained, Defendants, in responding to Plaintiff's Motion, filed the Affidavit of Yvonne McDonald, R.N., an employee of the South Carolina Department of Corrections assigned to Lee Correctional Institution. (See Dkt. No. 31-1.) Ms. McDonald states that her review of the medical records "indicates that, with regard to his prescription medication, Inmate Blakely is a 'KOP' inmate, rather than a dose-by-dose inmate, meaning he keeps his prescription medications on his person and takes them as needed." (Id. ¶ 5.) Ms. McDonald's Affidavit further states,

> [I]t is Inmate Blakely's responsibility to order refills of his prescriptions in a timely fashion to ensure that he does not run out. Once we receive his order, we send it to the Kirkland pharmacy, and Kirkland fills the script and returns it to Lee. Inmate Blakely is responsible to pick it up. If he neglects to order his medications or pick them up, he will not get them. From my review of Inmate Blakely's records, I could not see where anyone at SCDC has withheld his prescription medications from him, or refused to order his medications.

(Id.) Ms. McDonald noted that Blakely had an appointment with an optometrist scheduled for August 3, 2010, but that "[w]ith regard to medical specialists, an inmate is only referred out to a specialist if a physician deems that it is medically necessary, and it is approved by SCDC headquarters. An inmate does not get referred out to a specialist simply because he wants to see one." (Id. ¶¶ 6-7.)

In Reply (Dkt. No. 32), Plaintiff admits that he does keep his medication on his person ("KOP") but contends "it is easy for these individual [employees at Lee] to withhold the medication or even to tamper with the medication before Plaintiff receives it." (Dkt. No. 32.) Plaintiff contends that Nurse McDonald is "bias[ed], seeking revenge and is retaliating against

Plaintiff." (Id.) He asserts, *inter alia*, that he has a "kidney infect[ion] which the medical department have [sic] known of since July 27, 2010 and have done nothing." (Id.) In another filed document, Plaintiff states that he "wants the Court to understand that the 'Medication Administration Record' reveal[s] when medical ordered Plaintiff's medication, not when Plaintiff requested his refill on medication." (Dkt. No. 33.) He attached a SCDC "Request to Staff Member" dated June 27, 2010, wherein he writes to Ms. Raven, stating he believes she forgot to order his medication "for the burning and itching skin." (Dkt. No. 33-2.) He also inquired of Ms. Raven as to whether she "renew[ed] [his] 30 days medication." (Id.) The "Disposition by Staff Member" section of the form states, "All meds renewed." (Id.) Blakely also attaches a "Refusal of Medical Advice Form," which he signed on August 2, 2010, wherein he refused the care of the optometry clinic. (Dkt. No. 33-3.)[1]

This Court concludes the Magistrate Judge correctly determined that Plaintiff's Motion for Medical Treatment (construed as a Motion for Preliminary Injunction) (Dkt. No. 25) should be denied. "Preliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." MicroStrategy Inc. v. Motorola, Inc., 245 F.3d 335, 339 (4th Cir. 2001). A plaintiff seeking a preliminary injunction must establish all four of the following elements: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); The Real Truth

---

[1] Plaintiff contends he was not informed of the date of the appointment and that he refused because he had to be at Lee Correctional Institution for a pre-GED test on August 3, 2010. (Dkt. No. 33 at 1-2.)

About Obama, Inc. v. Federal Election Comm'n, 575 F.3d 342, 346–47 (4th Cir. 2009), *overruling* Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).[2] A plaintiff must make a clear showing that he is likely to succeed on the merits of his claim. Winter, 129 S.Ct. at 376; Real Truth, 575 F.3d at 345–46. Similarly, he must make a clear showing that he is likely to be irreparably harmed absent injunctive relief. Winter, 129 S.Ct. at 374–76; Real Truth, 575 F.3d at 347. Only then may the court consider whether the balance of equities tips in the petitioner's favor. See Real Truth, 575 F.3d at 346-47.[3] Finally, the court must pay particular regard to the public consequences of employing the extraordinary relief of injunction. Real Truth, 575 F.3d at 347 (quoting Winter, 129 S.Ct. at 376-77).

By statute, the Prison Litigation Reform Act grants courts the authority to enter a temporary restraining order or an order for preliminary injunctive relief in civil actions concerning prison conditions; however,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

---

[2] Although the original decision in Real Truth was vacated by the Supreme Court for further consideration in light of the decision in Citizens United v. Federal Election Commission, — U.S. —, 130 S.Ct. 876 (2010), the Fourth Circuit reissued its opinion on Parts I and II of its earlier opinion in the case, 575 F.3d at 345–347, stating the facts and articulating the standard for the issuance of preliminary injunctions, before remanding it to the district court for consideration in light of Citizens United. See The Real Truth About Obama, Inc. v. Federal Elections Comm'n, 607 F.3d 355 (4th Cir. 2010).

[3] Based on Winter, the Real Truth Court expressly rejected and overruled Blackwelder's sliding scale approach that formerly allowed a plaintiff to obtain an injunction with a strong showing of a probability of success even if he demonstrated only a possibility of irreparable harm. Real Truth, 575 F.3d at 347; Winter, 129 S.Ct. at 375-76.

> Preliminary relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

Id. at 526.

Plaintiff failed to object to the Magistrate Judge's recommendation that his Motion for Medical Treatment (Dkt. No. 25) be denied. After reviewing the record, the Court agrees with the Magistrate Judge's conclusion that Plaintiff failed to meet the Winter factors.

Within this Motion for Medical Treatment, and in a separate Motion to Transfer, Plaintiff requests a transfer to a different institution. (Dkt. No. 25; Dkt. No. 76.) In a filing dated January 25, 2011, Plaintiff acknowledges that these motions are moot, as he has been transferred to Perry Correctional Institution in Pelzer, South Carolina. (Dkt. No. 89; see also Dkt. No. 90; Dkt. No. 96.) Accordingly, Plaintiff's Motions to Transfer are denied as moot.

## III.  Conclusion

It is therefore **ORDERED,** for the foregoing reasons, that Plaintiff's Motion for Medical Treatment (Dkt. No. 25) is **DENIED**. It is also **ORDERED** that Plaintiff's Motion to Transfer (Dkt. No. 76) is **DENIED** as moot.

**AND IT IS SO ORDERED.**

_____
The Honorable Richard Mark Gergel
United States District Judge

Charleston, South Carolina
February 11, 2011