IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

James G. Blakely,                          )
a/k/a Jimmy G. Blakely,                    )
                                           )    Civil Action No. 4:10-718-RMG-TER
                         Plaintiff,        )
                                           )
v.                                         )    **REPORT AND RECOMMENDATION**
                                           )    **OF MAGISTRATE JUDGE**
Robert Wards; Mr. David                    )
M. Tatarsky; A. Padula;                    )
M. Bell; Major Dean; Nurse                 )
MacDonald; J. Livingston;                  )
A. Smith; Chaplain T. Evans;               )
Chaplain Cain; Ms. Simon;                  )
Lt. June; Mr. Bainor; Mr.                  )
Biddinger; Ms. Taylor; Ms.                 )
Hancock; and Jon Ozmint,                   )
                                           )
                         Defendants.       )
_____    )

## I. PROCEDURAL BACKGROUND[1]

The plaintiff, James G. Blakely, filed this action in state court and the defendants removed

it to this court on March 19, 2010, as the plaintiff alleged violations of his constitutional rights

under 42 U.S.C. § 1983.[2]  During the time of the matters alleged in his complaint, the plaintiff was

housed at the Lee Correctional Institution ("LCI").

---

[1]The plaintiff is no stranger to the federal court. Since 1998, the plaintiff has filed more than thirty-four (34) lawsuits, predominately prisoner civil rights actions pursuant to 42 U.S.C. § 1983 and habeas corpus petitions pursuant to 28 U.S.C. § 2254, and almost all have been dismissed for lack of merit. Currently, the plaintiff has three § 1983 actions, including this one, pending in this court.

[2]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge

Defendants filed a motion for summary judgment on October 10, 2010, along with a memorandum and exhibits supporting the motion. (Doc. # 48). Because the plaintiff is proceeding pro se, he was advised on or about October 12, 2010, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment could result in the dismissal of his complaint. (Doc. # 50). The plaintiff filed a response on November 23, 2010. (Doc. # 70). The defendants filed a reply to the response on December 3, 2010, (doc. # 71) and the plaintiff filed a sur-reply on December 9, 2010. (Doc. # 73). The defendants filed a motion to strike the plaintiff's sur-reply on December 17, 2010. (Doc. # 75).

Also pending are the following motions: Defendants' Motion to Strike the Plaintiff's Sur-Reply (Doc. # 75); Plaintiff's Motion for Habeas Relief (Doc. # 78)[3];and Plaintiff's Ex Parte Motion (Doc. # 104).

## II. STANDARD FOR SUMMARY JUDGMENT

As previously stated, the defendants filed a motion for summary judgment. A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See* <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner,</u> 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, <u>Weller v. Department of Social Services</u>, 901 F.2d 387 (4th Cir.

---

[3]Rather than a motion for habeas relief, his motion actually appears to be a motion for subpoenas and to allow the Plaintiff to testify at trial.

1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with"specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and <u>Celotex v. Catrett</u>, 477 U.S. 317 (1986). The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In *Celotex*, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  <u>Celotex</u>, 477 U.S. at 322-323.

### III. DISCUSSION

The plaintiff has alleged numerous claims against the defendants, including claims of excessive force, deliberate indifference to serious medical needs, denial of access to the courts, religious discrimination,  violation of equal protection rights, and claims relating to his mail and

conditions of confinement.[4]  The plaintiff alleges the defendants have violated his constitutional rights under the First, Fifth, Sixth, Eight and Fourteenth Amendments.  The plaintiff is seeking actual and punitive damages, a declaratory judgment that the defendants have violated his rights, and a "preliminary and permanent injunction" ordering the defendants to "stop denying [the plaintiff] his United States Constitutional Rights."   (Compl.)

## A. Exhaustion of Administrative Remedies

The defendants have pled the affirmative defense of failure to comply with the Prison Litigation Reform Act's ("PLRA's") exhaustion requirement and have moved for summary judgment on that basis on many of the claims as well as on the merits.

The PLRA requires that a prisoner exhaust the available administrative remedies before filing a § 1983 action concerning conditions of his confinement.  42 U.S.C. § 1997e(a).  In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit.  The PLRA amended §1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  *Id.*  Accordingly, before the plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the SCDC grievance process. The United States Supreme Court has held that "Congress

---

[4]In his memorandum opposing the defendants' summary judgment motion, the plaintiff raises numerous new claims. These claims are not properly before the court and the undersigned has addressed only those claims raised in the complaint.

4

has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001) (holding exhaustion required even though plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) (holding exhaustion required even though plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) (applying Booth to affirm district court's denial of relief to plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81 (2006).

In order to exhaust the South Carolina Department of Corrections ("SCDC") administrative remedies, after unsuccessful attempts at informal resolution of the problem, an inmate must fill out a Step 1 grievance about the matters raised in his complaint and give the form to the Institutional Inmate Grievance Coordinator within fifteen (15) days of the alleged incident of which the inmate complains. The Warden must respond to the Step 1 grievance in writing no later than forty (40) days from the filing of the initial grievance. If the inmate is not satisfied with the Warden's response, he must file an appeal of the Step 1 grievance response by filing a Form 10-5a or Step 2 Request for Responsible Official Review with the Inmate Grievance Coordinator within five (5) days of the receipt of the response from the Warden. A responsible official has sixty (60) days to respond to the Step 2 grievance. The decision of the official who answers Step 2 is considered the

SCDC's final response in the matter. Only after completing both Steps 1 and 2 in the SCDC grievance process has an inmate properly exhausted a claim under § 1983. 42 U.S.C. § 1997e.

The plaintiff alleges he was hindered from filing grievances by the grievance clerk, Ms. L. Johnson. (Pl.'s Mem. Opp. Summ. J. Mot. at 3.)  He alleges Johnson refused to provide him with a Step 2 grievance form.  Id.  He also contends that Johnson deemed some of his grievances as "unprocessed" or responded that the plaintiff's attempts at an informal resolution were insufficient. Id.  He alleges that the denial of access to the grievance process in essence has denied him access to the courts because of the defendants' argument that the plaintiff's failure to exhaust bars his claims in this action.  (Pl.'s Mem. Opp. Summ. J. Mot. at 5.)  While it appears that many of the plaintiff's claims may not have been properly exhausted, as discussed below, on the merits, the plaintiff's allegations do not support the violation of a constitutional right and he is not entitled to any relief under § 1983.

## B.  Supervisory Liability

The plaintiff alleges claims against the defendants Ozmint, Wards, Tatarsky, Padula, Bell, Dean, MacDonald, Bainor, and Biddinger based solely on their supervisory capacities.[5] (Compl. at 5-7; 21.)  However, the plaintiff does not allege any facts showing how any of these defendants were personally involved in any constitutional violations.  The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity.  See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).  "Because

---

[5]In addition to the claims based upon supervisory liability, the Plaintiff also has alleged claims of excessive force against the Defendant Dean which are discussed below.

6

vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984).

The plaintiff has not alleged that the defendants Ozmint, Wards, Tatarsky, Padula, Bell, Dean, MacDonald, Bainor, and Biddinger were personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, the plaintiff has not shown that these defendants were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of the other defendants. Thus, the plaintiff fails to show that the defendants Ozmint, Wards, Tatarsky, Padula, Bell, Dean, MacDonald, and Bainor are liable on a theory of respondeat superior or supervisory liability.

## C. Conditions of Confinement

The plaintiff alleges several claims regarding the food he has been served at the LCI. He alleges he has been served food that is half-cooked, cold, unseasoned, and smells filthy. (Compl. at 21.) He alleges no salt and pepper are provided and the inmate food servers do not wear hair nets or gloves. *Id.* He also alleges the cafeteria is not properly cleaned and inmates have to provide their own utensils and they have no way of sanitizing their utensils. *Id.* He alleges inmates

are given only ten minutes to eat.  *Id.*  Finally, he alleges inmates are served unsweetened coffee for breakfast and unsweetened tea for lunch and supper or water.  (Compl. at 21.)

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively, prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993). Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim.  Hudson v. McMillian, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, Strickler, 989 F.2d at 1380-81, or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. Helling v. McKinney, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the prisoner. *See* Rhodes v. Chapman, 452 U.S. 337, 364 (1981).

Prisoners have a right only to adequate food. It need not be either tasty or even appetizing. *See* Williams v. Berge, 102 Fed. Appx. 506 (7th Cir. 2004) (serving moldy raisins and rancid peanut butter). Smaller portions or a failure to provide a special diet cannot satisfy the first element of a retaliation claim unless such provisions either prove inadequate or rise to the level of cruel and unusual punishment in violation of the Eight Amendment.  *See* Henderson v. Commonwealth of Va., 2008 WL 204480 at *4 (W.D.Va. January 23, 2008.)

The plaintiff has produced no evidence that the meals or drinks that he has been served were so inadequate that they constituted cruel and unusual punishment. However, as stated above, even if the plaintiff could establish the first element of his claim, he has not produced any evidence of an actual injury.  Accordingly, the defendants should be granted summary judgment on these claims.

**D.  Denial of Access to the Courts and Mail Claims**

The plaintiff alleges claims regarding the denial of access to the courts.  First, the plaintiff alleges that on July 7, 2009, he informed the defendant LCI librarian, J. Livingston, that he had a 90-day deadline in a case before the United States Supreme Court . (Compl. at 10.) He states that Livingston told him that he would have to wait until 30 days before the deadline to gain access to the law library.  Id.  He also alleges that once he was within the that 30-day period, he was allowed library access only on certain days and as a result, he had only 8 days out the 90 days to research and prepare a writ of certiorari. Id.  The Plaintiff also alleges Livingston has denied him copies. (Compl. at 12.)

Second, the plaintiff contends that defendants violated his First Amendment rights because the Defendant Simons has refused to mail outgoing legal mail or give out incoming legal mail if an inmate has any hair visible on his face.  (Compl. at 18.)  He alleges this practice has "effected [his] ten days deadline."  Id.  He also alleges mail is not delivered to the inmates in a timely manner. (Compl. at 19.)

It is clear that prisoners have a constitutionally protected right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977). Inmates must be provided "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996). The right to access the courts extends to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement. Id. at 354-55. The actual injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or impeded." Id. at 353. "To state a claim that a delay in receiving legal mail violated an inmate's constitutional rights, the prisoner must allege facts showing that the delay interfered with his right of access to the courts." Bryant v. Lee, No. 92-6571, 1993 WL 188302 (4th Cir. June 2, 1993). In Lewis, the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. Lewis, 518 U.S. at 352-53.

In regard to the plaintiff's denial of access until the 30-day period immediately prior to his court deadline, the plaintiff has failed to state a claim of denial of access. First, there are no allegations in the complaint that plaintiff missed any deadlines because of the defendant's actions.[6]

---

[6]In his response to the defendants' summary judgment motion, the plaintiff now appears to be alleging that Livingston is responsible for his untimely mailing of the writ of certorari. (Pl.'s Mem. Opp. Summ. J. Mot. at 10.) This claim was not raised in the Complaint and therefore is not properly before the court. In any event, the plaintiff specifically couches the defendant Livingston's actions as negligence in miscalculating the plaintiff's deadline. Such allegations would not support a denial of access claim. See Sims v. Landrum, 170 F. App'x 954, 957 (6th Cir. 2006) (holding a plaintiff must allege that the deprivation of his rights was the result of intentional conduct or gross negligence; mere negligence will not suffice.)

Rather, it appears that the plaintiff is unhappy with the amount of time he was given to research. However, the record shows that after the plaintiff was aware of the court deadline in July 2009, the plaintiff used the law library at the LCI 4 days in July, 11 days in August, and 12 days in September, for a total of 27 days.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. #  Livingston Aff. Ex.- Library Log.)[7]

The Constitution does not guarantee a prisoner unlimited access to the law library and related services. Lindquist v Idaho State Bd. of Corrections, 776 F2d 851, 858 (9th Cir 1985). Plaintiff fails to make a sufficient showing that access to the law library for 27 days attributed to the denial of the writ of certiorari. Accordingly, as the plaintiff has provided no evidence of an actual injury, this claim should be dismissed.[8]    Furthermore, as to the plaintiff' allegations regarding the denial of copies, the plaintiff has failed to state a denial of access claim. See generally, Johnson v. Moore, 948 F.2d 517, 521 (9th Cir.1991) (holding there is no constitutional right to free photocopies); Young v. Larkin, 871 F.Supp. 772, 782 n. 19 (M.D.Penn.1994) (same); Harrell v. Keohane, 621 F.2d 1059, 1061 (10th Cir.1980); Dugar v. Coughlin, 613 F.Supp. 849, 853

---

[7]The plaintiff's self-serving, unsubstantiated argument that the log has been altered, (Pl.'s Mem. Opp. Summ. J. Mot. at 13),  is insufficient to avoid summary judgment. In addition, even assuming he was limited to eight days as he asserts, he still fails to show injury.

[8]The undersigned also notes that the plaintiff's voluminous filings in this case belie any injury from an alleged denial of copies. Wise v. Ozmint, No. 6:09-153, 2009 WL 3232672, at *3 (D.S.C. Oct.6, 2009) (noting that plaintiff's "numerous, lengthy, and timely filings indicate that he has been given a significant amount of access to both the prison law library and mailroom" and holding that where plaintiff "fails to show some actual injury resulting from denial of access to the courts, his assertion that he has been denied access" is without merit.).

(S.D.N.Y.1985) (holding indigent litigants are not entitled to free photo-copies or unlimited free postage in prisoner cases).

In regard to the plaintiff's mail claims, a prisoner alleging the non-delivery or delay in sending or receiving legal mail, must allege that the delay caused a legal action to be dismissed or caused a court to sanction an inmate in some fashion. See Woodfin v. Johnson, No. 88-7100, 861 F.2d 267 (4th Cir. October 19, 1988) (Table) (citing King v. Atiyeh, 814 F.2d 565, 568 (9th Cir.1987); Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir.1985);and Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir.1974) (per curiam)).   Finally, a claim for failure to provide access to the courts must be pleaded with specificity. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996)

Even assuming the plaintiff's constitutional rights were implicated by the delay of delivery of his legal mail, or even the non-delivery, the plaintiff has failed to state a claim because he has not alleged an injury with any specificity.  The plaintiff has merely alleged "[t]he practice have effected [his] ten days deadlines."  (Compl. at 18.)   The plaintiff has not alleged any harm or prejudice in any specific court action. In fact, the plaintiff has not even alleged that he had a specific court case pending at the time. Therefore, the plaintiff has failed to allege or establish any actual harm or prejudice. Accordingly, he has failed to state a claim regarding his legal mail and the defendants should be granted summary judgment on this claim.

**E. Medical Indifference Claims**

The plaintiff alleges the defendants have not provided him with the proper shoes or clothing, withheld his medication for 33 days, and incorrectly diagnosed a nerve problem.  (Compl. at 8-9.)

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." Estelle v. Gamble, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. To be liable under this standard, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Deliberate indifference is a very high standard. In Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, 429 U.S. 104; Farmer, 511 U.S. 825; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer

a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

Further, mere negligence, malpractice, or incorrect diagnosis is not actionable under § 1983. Estelle, 429 U.S. at 106. While the Constitution requires a prison to provide inmates with medical care, it does not demand that a prisoner receive the treatment of his choice. Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citation omitted); see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Furthermore, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Hill v. Dekalb Regional Youth Detention Center, 40 F.3d 1176, 1188 (11th Cir.1994).

Reviewing the record, the plaintiff has received extensive medical care. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 22.)[9] The type and amount of medical care is left to the discretion of prison officials as long as medical care is provided. Brown v. Thompson, 868 F.Supp. 326 (S.D.Ga.1994). "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v.

---

[9]As the defendants note, "[a]s of March 9, 2010, the Plaintiff's medical records reflect a total of 1005 medical encounters since he first reported to the SCDC on January 21, 1999." (Defs.' Mem. Supp. Summ. J. Mot. at 10.)

Fair, 846 F.2d 811, 817 (1st Cir.1998). The plaintiff's disagreement with the defendants' conclusion that other shoes were not medically necessary simply does not amount to a constitutional violation. Guillen v. Stanley, 2006 WL 2065571 at *5-6 (E.D.Tex. July 24, 2006) (unpublished) (holding that prisoner's disagreement with medical personnel's opinion that he did not need medical boots did not amount to a constitutional violation); Thomas v. Herrera, 2005 WL 3307528 at *6 (S.D.Tex.Dec.6, 2005) (unpublished) (holding that plaintiff's disagreement with doctor's failure to prescribe him special work boots was not a cognizable constitutional claim; "Indeed, even if plaintiff could establish that orthopedic boots were appropriate, his claim would amount to no more than negligence, which is not actionable").

As to the plaintiff's allegation regarding nerve pain in his leg, the plaintiff's medical records show that he has been treated for pain running from his back down his leg, or sciatic pain, numerous times. (Defs.' Mem. Supp. Summ. J. Mot. Ex. 22 at 13, 15, 17, 27, 28, 31, 36, 38.) The plaintiff's issues appear to stem from his frustration over the inability to cure his chronic lower back and leg pain, but without more this fails to establish a constitutional violation. See, e.g., Armour v. Herman, No.2005 WL 2977761, at *3 (N.D.Ind. Nov. 4, 2005) (holding that "[t]he Eighth Amendment does not require medical success. . . ."); Ramos v. Artuz, 2003 WL 342347, at *9 (S.D.N.Y. Feb.14, 2003) (indicating that an unsuccessful course of treatment does not support a finding of deliberate indifference); see also Moolenaar v. Champagne, 2006 WL 2795339, at *7 (N.D.N.Y. Sept.26, 2006) (finding plaintiff's complaints of pain resulting from degenerative disc disease, a chronic ailment sustained by many individuals and treated with exercise, pain medication,

and physical therapy, with which plaintiff was treated, did not give rise to a valid deliberate indifference claim.)  Additionally, with regard to the plaintiff's claims concerning his medications being withheld, the plaintiff makes only conclusory, non-specific allegations.  Based on the foregoing, the plaintiff has failed to establish a medical indifference claim against the defendants.

**F.  Excessive Force Claims**

The plaintiff alleges that on June 1, 2009, he witnessed a fellow inmate being beaten and maced by a Lieutenant June while the inmate was handcuffed and lying on the floor. (Compl. at 8, 20.)  He alleges the defendant Major Dean watched and refused to correct the actions of the correctional officers.  (Compl. at 8.)   The plaintiff states he was forced to enter his cell which was filled with mace.  (Compl. at 8, 20.) [10]  He also alleges that Dean "has participated in the beating of inmates, and have had inmates beating (sic) for filing grievance and civil action (sic) upon him."  Id.  He was placed in fear of his life because he has breathing problems and could not breathe properly.  (Compl. at 20.)  Id.  He alleges he suffered "physical, mental and emotional trauma."  Id.

It is well established that the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment.  Hudson v. McMillian, 503 U.S. 1, 5 (1992).   The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v.

---

[10]In the Complaint, it is unclear as to whether the plaintiff is alleging he was actually maced. However, in his memorandum opposing summary judgment, it is clear the plaintiff is complaining only that he was forced to enter his cell where mace had been discharged.  (Pl.'s Mem. Opp. Summ. J. Mot. at 35.)

Gaddy, --- U.S. ----, ----, 130 S.Ct. 1175, 1179, ---L.Ed.2d ----, ---- (2010). The Supreme Court has identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley v. Albers, 475 U.S. 312, 321 (1986).  Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins, 130 S.Ct. 1175, 1178.

While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant.  Wilkins , 130 S.Ct. at 1178.  Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it."  See Hudson, 503 U.S. at 7  (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct.  at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind."  Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.  Id.

17

Here, the plaintiff's allegations do not support a claim of excessive force.[11]   The plaintiff alleges he has suffered a direct psychological injury and was put in extreme fear of his life.   He further alleges he experienced breathing problems after inhaling the mace.   The plaintiff's injuries, to the extent they exist at all, are nothing more than de minimis.   His allegations indicate that the officers' actions did not cause him any physical injury, other than the temporary discomforts normally associated with mace.

Furthermore, the alleged used force by the defendants is not "of a sort repugnant to the conscience of mankind."   Id.   Here, there is no evidence that the mace was intentionally or maliciously deployed .  Lt. June avers that he was hit by an inmate with a lock in the back of the head and in an effort to gain control another officer attempted to use mace.  (Defs.' Mem. Supp. Summ. J. Mot. Ex. 7- June Aff. ¶¶ 5-6.)  However, the inmate struck the mace cannister with the lock causing it to explode and the mace was released into the unit.  Id.   The officers did not intentionally deploy the mace and were merely trying to regain control of the situation and return the inmates to their cells. Justice v. Dennis, 834 F.2d 380, 382 (4th Cir.1987)(holding the court must recognize that "agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society.").  The court "must accord due deference to an officer's efforts to restrain [an inmate] when faced with a dynamic and potentially violent situation; otherwise, 'we would give encouragement to insubordination in an environment which is already volatile

---

[11]The undersigned notes that the plaintiff cannot raise any issue as to the alleged force used upon other inmates.  See Hummer v. Dalton, 657 F.2d 621, 625-26 (4th Cir. 1981) (holding a prisoner cannot act as a "knight-errant" for others)

enough.'" Scarbro v. New Hanover County, 374 F. App'x 366, 370 (4th Cir.2010) (unpublished) (quoting Grayson v. Peed, 195 F.3d 692, 697 (4th Cir.1999)).  Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the plaintiff in this instance.  Accordingly, the plaintiff has failed to state an excessive force claim.

**G. Religious Discrimination Claims**

The plaintiff alleges that he is a Muslim and he has been discriminated against based upon his religion.  (Compl. at 13.)  Specifically, the plaintiff alleges that the Muslims at the LCI have been subjected to religious discrimination by the defendants Cain and Evans, the chaplains at the LCI.  The plaintiff specifically argues that the defendant's actions have violated his free exercise of religion rights via the First Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb.

As an initial matter, the undersigned notes that the RFRA is inapplicable to this case. The RFRA establishes that  government  shall not substantially burden a person's exercise of religion. In City of Boerne v. Flores, 521 U.S. 507 (1997), the Supreme Court invalidated the RFRA as it applied to state prisons and prisoners, holding that the statute exceeded Congress's remedial powers

under Section 5 of the Fourteenth Amendment. [12] Hence, the RFRA does not apply to state prisons such as the LCI.

Under the First Amendment, inmates clearly retain the right to free exercise of religion in prison. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). The Free Exercise Clause of the First Amendment prohibits the adoption of laws designed to suppress religious beliefs or practices. See Morrison v. Garraghty, 239 F.3d 648, 656 (4th Cir. 2001). To state an actionable violation under the Free Exercise Clause, a plaintiff must show both that he sincerely held a religious belief and that the defendant's actions substantially burdened his religious freedom or expression. See Blue v. Jabe, 996 F.Supp. 499, 502 (E.D.Va.1996) (discussing Wisconsin v. Yoder, 406 U.S. 205, 215-216 (1972)). The Supreme Court has defined "substantial burden" in a variety of ways, including "putting substantial pressure on an adherent to modify his behavior and violate his beliefs," Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 717-18 (1981), and forcing an individual to "choose between following the precepts of [his] religion and forfeiting benefit, on the one hand, and abandoning one of the precepts of [his] religion . . . on the other," Sherbert v. Verner, 374 U.S. 398, 404 (1963).

Evaluating a statutory violation under RLUIPA involves the same threshold issues as invoked by the Free Exercise Clause for the most part. The RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an

---

[12]In 2000, Congress responded by enacting the RLUIPA which is largely a reprisal of the provisions of the RFRA and the RLUIPA is considered the constitutional successor to RFRA. See Cutter v. Wilkinson, 544 U.S. 709, 719-20 (2005).

institution unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest, and 2) is the least restrictive means of furthering that compelling governmental interest. See 2 U.S.C. § 2000cc-1(a); Cutter v. Wilkinson, 544 U.S. 709, 712 (2005). The Supreme Court has defined "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006). Only when such a showing is made does the government bear the burden of persuasion that its practice is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.  Lovelace, 472 F.3d at 187[13].

With regard to his claims under the First Amendment and the RLUIPA, assuming the plaintiff has demonstrated that he possesses a sincerely held authentic religious belief in practicing his Muslim faith, there is no evidence that the exercise of his religious beliefs was substantially burdened by the defendants. The plaintiff cannot show that the alleged actions of the defendants hindered the practice of a particular religion.  Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450 (1988) (holding "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to state a claim under the First Amendment).

---

[13]To the extent the plaintiff seeks damages under the RLUIPA, his claims fail because the RLUIPA does not provide for monetary relief against defendants in their official or individual capacities. See Rendelman v. Rouse, 569 F.3d 182, 189 n. 2 (4th Cir. 2009).

21

In essence, the plaintiff's claims under the Free Exercise clause and the RLUIPA impose the same requirements: the plaintiff must allege facts showing that a particular action by a particular defendant "substantially burdened his sincerely-held religious beliefs." Ajaj v. Federal Bureau of Prisons, 2011 WL 902440 (D.Colo. 2011)(citing Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009) (Free Exercise claim); Kay v. Bemis, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (RLUIPA claim). See also Washington v. Klem, 497 F.3d 272, 277 (3d Cir.2007) (noting that in religious discrimination claims pursuant to the RLUIPA, the plaintiff bears the burden of persuasion on whether the challenged practice substantially burdens the plaintiff's exercise of religion). This the plaintiff has not done and thus his claims under the Free Exercise clause of the First Amendment and the RLUIPA  should be dismissed.  Furthermore, these claims should also be dismissed for the reasons discussed below.[14]

While the plaintiff claims that Christian inmates are given more access to the LCI chapel than Muslim inmates, there is no "constitutional obligation to equally allocate resources among all religious groups." Vernon v. City of Los Angeles, 27 F.3d 1385 (9th Cir.1994) (citing Butler-Bey v. Frey, 811 F.2d 449, 453-54 (8th Cir. 1987).  Furthermore, not every "religious sect or group within a prison however few in number-must have identical facilities or personnel." Cruz v. Beto, 405 U.S. 319, 322, n. 2 (1972).  In his affidavit, Evans avers that while each religion is allowed time in the chapel each week for their worship and study, access to the chapel is limited because

---

[14]To the extent that the plaintiff specifically alleges some of the defendants have violated his equal protection rights by discriminating against him based upon his religion, these claims are discussed separately herein. Understandably, there is some overlapping of arguments and discussion regarding these claims.

22

there is only one chapel to accommodate the entire prison population at the LCI.  (Defs.' Mem. Supp. Summ. J. Mot. - Evans Aff. ¶ 7.)  Access  is further dictated by the availability of volunteers to lead religious worship or study.  Id.  Evans states that Muslim inmates are allowed to use the LCI chapel on Fridays for the Islamic congregational prayer, Jumuah, and on Tuesday afternoons for Arabic Study. (Defs.' Mem. Supp. Summ. J. Mot. - Evans Aff. ¶ 9.)   They further state that the availability of additional study programs and religious programs for Muslim inmates are limited due to a lack of volunteers who can lead any such programs.  Id. ¶ 8.

Additionally, with regard to the plaintiff's claims that there is disparity between the Christian and Muslim inmates about the food, religious books, goods, and money provided by the SCDC, such claims fail to set forth any claim against the defendants because the SCDC does not provide these items to any inmate, regardless of their religious affiliation.  (Defs.' Mem. Supp. Summ. J. Mot. - Evans Aff. ¶ 14.)  Evans states that these items are brought into LCI by volunteers and the majority of such volunteers are Christian.  Id. The plaintiff has failed to establish that the defendants have discriminated against the Muslim inmates at the LCI on the basis of their religion. Accordingly, based on the foregoing, the plaintiff's religious freedom claims under the First Amendment and the RLUIPA should be dismissed.

### H. Equal Protection Claims

The plaintiff alleges several equal protection claims. He alleges inmates at other institutions are seen faster by medical personnel, Muslims are treated differently than Christians, and that he was denied a job in the chapel because of his religion. (Compl. at 9, 15, 16.)

It has long been settled that "[p]risoners are protected under the Equal Protection Clause . . . from invidious discrimination." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to establish an equal protection claim, an inmate must show that "he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). To state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. Cruz, 405 U.S. at 321-22. See Chapman v. City of Detroit, 808 F.2d 459, 465 (6th Cir. 1986)(conclusory allegations of discrimination not sufficient to establish liability); Jaffe v. Federal Reserve Bank of Chicago, 586 F.Supp. 106, 109 (N.D.Ill.1984) (holding a plaintiff "cannot merely invoke his [religion] in the course of the claim's narrative and automatically be entitled to pursue relief"). To meet this requirement, plaintiff is required to set forth "specific, non-conclusory factual allegations that establish improper motive." Williams v. Hansen, 326 F.3d 569, 584 (4th Cir.2003); Green v. Chavis, 2006 WL 3489103 (D.S.C. 2006).

As to the plaintiff's allegations that inmates in other institutions receive medical treatment faster, this claim is without merit. The plaintiff has not offered any evidence that he was treated differently than other inmates with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. The plaintiff merely makes bald allegations regarding discrimination without any support which are insufficient to survive summary judgment. White v. Boyle, 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory allegations insufficient to avoid summary judgment). Accordingly, the plaintiff's equal protection violation claims in regard to other inmates being treated faster at other institutions is without merit.

As to the plaintiff's allegation that he was denied admission into a Bible study program through Columbia International University, the undersigned initially notes that this claim is barred as it is clear from the record that the plaintiff did not exhaust his administrative remedies. The record shows that on February 2, 2008, the plaintiff filed a request to staff regarding his attempt to register for a Bible study class through Columbia International University. (Pl.'s Mem. Opp. Sum. J. Mot. Ex. 45.) In the response, he was told that he was denied a recommendation for the class based upon the university's requirement that an applicant not have any disciplinaries for six months and the fact that he did not meet this requirement. (Id.) Then, on March 27, 2008, the plaintiff filed another request to staff on this issue stating that he was denied because he was a Muslim. (Id. at 44.) There is no evidence a Step 1 or Step 2 grievance was ever filed regarding this incident. Furthermore, even if the plaintiff had exhausted his remedies, the plaintiff does not dispute that he

had a disciplinary record which would have prevented him from attending.  Accordingly, this claim should be dismissed.

As to the plaintiff's claim that he was denied a job based upon his religion, again the plaintiff has not exhausted this claim.  In the record, there is request to staff dated April 25, 2010, in which the plaintiff complains that he applied for a job in the chapel and was told there were no openings, but he "noticed a new employee among the inmate workers." (Pl.'s Mem. Opp. Summ. J. Mot. Ex. # 39.)   Based upon this, he states that he was denied a job in the chapel because of his religion. Id.  The chaplain has stated in his affidavit that he does not specifically recall the plaintiff applying for a position in the chapel, but that any inmate regardless of religion is eligible to work in the chapel as long as their disciplinary record is clean.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 10- Evans Aff. ¶ .)

First, this law suit was filed February 12, 2010, and the plaintiff's request to staff (or informal resolution) which is the initial step in the exhaustion process is dated April 25, 2010, well over two months afterwards. The PLRA requires the exhaustion of all administrative remedies prior to filing suit and the plaintiff failed to do so.  Even had the plaintiff exhausted his remedies, the plaintiff's claim would still fail as he has not alleged any facts about the inmate that he states obtained the chapel job.  There is no information in the record that this inmate was similarly situated to the plaintiff. (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 10- Evans Aff. ¶ 21.) Accordingly, this claim should be dismissed.[15]

---

[15]To the extent that the Plaintiff is arguing that he has a liberty interest in a job in the chapel, this claim also fails as prisoners do not have a constitutional right to a prison job. Bulgur v. United States Bureau of

As to the plaintiff 's claims that non-Muslim inmates cannot attend Muslim services and celebrations, and that he cannot attend Christian services and celebrations, the plaintiff has failed to state an equal protection claim. First, plaintiff fails to explain how being denied the opportunity to attend Christian religions services and functions when one states they are Muslim can possibly impede the plaintiff's  right to practice his own religion when equal protection merely requires reasonable opportunities for all inmates to exercise *their own* religious beliefs. Cruz, 405 U.S. 321-22 (to state a claim, a plaintiff must allege facts sufficient to support the claim that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups.). See, e.g., Burks-Bey v. Stevenson, 328 F.Supp.2d 928,  (N.D.Ind. 2004)(holding "just as he has no Constitutional right to attend the worship and study of other religions, so to he has no Constitutional right to demand that he be accommodated to celebrate the holidays of other religions.").  Further, in light of the fact that the plaintiff also alleges that Christians are prohibited from attending Muslim services, and thus the restrictions on religious practice are applied to followers of both religions, there is no equal protection violation.

In any event, prisoners' constitutional rights are not unlimited and may lawfully be restricted when the prison's need to maintain security and order so require. See Turner v. Safley, 482 U.S. 78

---

Prisons, 65 F.3d 48, 50 & n. 3 (5th Cir. 1995) (collecting similar cases); Dupont v. Sanders, 800 F.2d 8, 10 (1st Cir. 1986).  "Assignments of work to prisoners is a matter of prison administration, within the discretion of prison administrators, and inmates do not have a liberty interest derived from the due process clause, nor do they have a property interest, in a specific job or any job at all while incarcerated." James v. Jackson, 2009 WL 291162, at *8 (D.S.C. 2009) (unpublished report and recommendation adopted by District Court order)(internal citations omitted).

(1987).   The defendants state that in order for an inmate to be placed on the outcount list to attend religious worship services, study groups, or religious celebrations for a particular faith group, the inmate must be registered with that faith group for security purposes.  (Defs.' Mem. Supp. Summ. J. Mot. Attach. # 10- Evans Aff. ¶ 17.)   As the defendants state, there are a large number of inmates at the LCI and only limited space for religious functions and limiting the attendance to those inmates who are registered for a particular faith group is necessary due to the limited space.  (Defs.' Mem. Supp. Summ. J. Mot. - Evans Aff. ¶ 17.)

Furthermore, while equal protection requires reasonable opportunities for all inmates to exercise their religious beliefs, it does not mean that all religions must receive identical treatment and resources. Cruz, 405 U.S. at 322 n. 2. "The Constitution does not require that each religious group be treated identically; good faith accommodation in light of practical considerations is all that is required." Glasshofer v. Thornburgh, 514 F.Supp. 1242, 1246 (E.D.Pa.1981), aff'd, 688 F.2d 821 (3d Cir. 1982).  Prison officials are not required to provide a special place of worship or a chaplain, priest or minister without regard to group size or the extent of demand. Id. Equal protection requires only that each inmate must have a reasonable opportunity to exercise his or her religious freedom, as guaranteed by the First and Fourteenth Amendments, without fear of penalty. Id. This means that prison officials may provide different religious groups with space of varying sizes or with varying amenities or with full-time, part-time or volunteer religious advisors.  Id. See also Adkins v. Kaspar, 393 F.3d 559, 566 (5th Cir. 2004), cert. denied, 545 U.S. 1104 (2005) (holding that equal

28

protection does not mean that every religious group within a prison must have identical facilities or personnel).  The plaintiff has failed to allege that he has been denied a reasonable opportunity to exercise his religion without fear of penalty. Based on the foregoing, the plaintiff's equal protection claims should be dismissed.

## I. Failure to Respond to Grievance

As to the plaintiff's allegations that his grievances  were not processed, even assuming the defendants failed to properly handle the plaintiff's grievances, the plaintiff has not stated a constitutional claim. The law is well-settled that there is no constitutional right to a grievance procedure.  Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-138, (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"). Accordingly, the plaintiff has also failed to state a § 1983 claim based on his grievances not being responded to by the LCI.

## J. Plaintiff's Allegations About Misappropriation of Funds and Extortion

The plaintiff generally alleges that inmates receive insufficient clothing and stamped envelopes and that the SCDC receives the money to buy these items, but refuses.  (Compl. at 19.) He also alleges the commissary charges too much money for items it sells.  (Compl. at 22.)  He also

alleges his account has been debited when he orders legal material prior to receiving them and when the item is lost, misplaced or stolen, his account is still debited.  (Compl. at 13.)

First, the "[m]isappropriation of public funds by state officials is a matter of state criminal law not constitutional law. To rise to the level of a constitutional claim, defendants would have to be misappropriating funds to the point where inmates' basic human needs were not being met." Kindley v. Moore, 2002 WL 31953746 * 2 (E.D.Va. 2002)(unpublished). Here, the plaintiff's allegations regarding the alleged  misappropriations of funds of public funds do not rise to that level.   Second, based upon the few general allegations in the Complaint, the Court cannot discern whether the deductions from plaintiff's account were proper. However, in any event, a prisoner's claim for deprivation of personal property is not cognizable under § 1983. Parratt v. Taylor, 451 U.S. 527, 544 (1981) (holding that a prisoner was "deprived" of his property within the meaning of the due process clause of the Fourteenth Amendment but that the state's tort remedy provided all the process that was due); see also Drake v. Jones, No. 08–0156, 2008 WL 2051744 at *3, (W.D.La. March 31, 2008) (holding that if state law remedies are available, no further due process required for prisoner's claims that true balance of account was not transferred when he was transferred to another prison).  Here, the plaintiff can institute a civil action in the state courts to recover his personal property under state law. See, e.g., S.C. Code § 15–69–10 et seq.

As to the plaintiff's allegations regarding the prices inmates are charged for items purchased in the commissary, the plaintiff cannot prove that Defendants deprived him of a right protected by the Constitution. Inmates have no constitutionally protected right to be able to purchase items from

the commissary. <u>Tokar v. Armontrout</u>, 97 F.3d 1078, 1083 (8th Cir.1996)(stating that "we know of no constitutional right of access to a prison gift or snack shop"). Additionally, inmates clearly have no constitutionally protected right to purchase items from the commissary at a particular price or to prevent the charging of exorbitant prices. <u>See</u> <u>McCall v. Keefe Supply Co.</u>, 71 Fed.Appx. 779, 780 (10th Cir. 2003)(finding that inmate's allegation that he was overcharged for goods at the prison commissary failed to state a constitutional claim the Constitution does not require the jail to offer its commissary items for sale at or near cost; <u>French v. Butterworth,</u> 614 F.2d 23, 25 (1st Cir.1980); <u>Trujillo v. Young,</u> 2003 WL 23312781 at *3 (W.D.Va. June 5, 2003) (holding that inmate has no protected right to purchase commissary items at low prices); <u>Hopkins v. Keefe Commissary Network Sales</u>, 2007 WL 2080480 at *5 (W.D.Pa. July 12, 2007) (holding no right to restrain commissary from charging even exorbitant prices); <u>Pepper v. Carroll</u>, 423 F.Supp.2d 442, 449 (D.Del.2006) (holding that inmate has no constitutionally protected right to purchase commissary items as cheaply as possible); <u>Rodriguez v. Swanson Serv. Corp.</u>, 2001 WL 506871 at * 1 (D.Me. May 11, 2001) (holding commissary pricing does not implicate constitutional concerns). Accordingly, based on the foregoing, the plaintiff has failed to establish he has been deprived of any constitutional right.

## K. Qualified Immunity

The defendants also raise the defense of qualified immunity. Qualified immunity requires "(1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a

reasonable person in the [official's] position would have known that doing what he did would violate that right." Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992). However, because there is no evidence that any specific right of the plaintiff was violated, it is unnecessary for this Court to address the qualified immunity defense.  See Porterfield v. Lott, 156 F.3d 563, 567(4th Cir. 1998) (when the court determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist.").

## IV. CONCLUSION

Based on the above reasoning, it is RECOMMENDED that the defendants' motion for summary judgment (doc. # 48) be GRANTED and this action dismissed with prejudice.

It is FURTHER RECOMMENDED if the District Court Judge adopts this report that all other outstanding motions be deemed MOOT.

Respectfully Submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 20, 2011
Florence, South Carolina


**The parties' attention is directed to the important notice on the next page.**